UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 23-11622-TBM |
| EARTHSNAP, INC. | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | Subchapter V |

**PLAN DATED JULY 18, 2023 FOR
SMALL BUSINESS UNDER CHAPTER 11, SUBCHAPTER V**

EarthSnap, Inc. ("EarthSnap" or "Debtor"), Debtor and Debtor-in-Possession herein, sets forth its Plan of Reorganization Dated July 18, 2023 as follows:

## I.    INTRODUCTION

1.1 -   This document constitutes the Plan of Reorganization for the Debtor.  This document is designed to provide all creditors and parties in interest with sufficient information with which to make an informed vote as to the acceptance or rejection of the Debtor's Plan.

1.2 -   Any terms which are set forth in this document and defined in the Bankruptcy Code shall have the meaning attributed to them as set forth on Appendix 1 attached hereto.

1.3 -   Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" under the Plan are entitled to vote to accept or reject the Plan.  Classes of Claims and Interests that are not impaired are not entitled to vote and are deemed to have accepted the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting. Each holder of an Allowed Claims in Class 2 shall be entitled to vote to accept or reject the Plan.

1.4 -   Regardless of creditor votes, if the Plan meets all of the applicable requirements of Section 1129(a) of the Bankruptcy Code, other than subsections (8), (10), and (15), the Court may confirm the Plan if it does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

1

1.5 -   As discussed more fully below, the Debtor firmly believes that the Plan represents the best alternative for providing the maximum value for creditors.  The Plan provides creditors with a distribution on their Claims in an amount greater than any other potential known option available to the Debtor.

1.6 -   THIS PLAN AND THE DISCLOSURES CONTAINED HEREIN HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION.  THE COMMISSION HAS SIMILARLY NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS PLAN.

## II.      <u>HISTORY AND EVENTS LEADING TO BANKRUPTCY</u>

Debtor was formed in 2021 for the purpose of designing, owning, and operating the EarthSnap mobile application ("APP").  The App was developed by Eric Ralls. The App allows users to identify items in nature, including plants, birds, bugs, and animals with a cell phone camera, including detailed information about the identified species and links to Earth.com websites.  The App encourages users to learn about the natural world around them. The App also includes a robust community component, and was recently launched on Apple and Google platforms post-Petition Date in April 2023.  As a result, only in the past few months has the Debtor been able to gain any traction with advertising income and subscription income. The Debtor earns advertising income through user activity, and earns subscription income when a user takes the next step to pay the Debtor a subscription fee for use of the App.

EarthSnap is wholly owned by Digital Earth Media, Inc. as of 2021.  Mr. Ralls is the CEO of Digital Earth Media, Inc. ("DEM"), and an 84% interest holder of DEM. DEM also wholly owns Earth.com, Inc. Earth.com, Inc. is a digital media publisher and hires various individuals on a contract basis to research and write media for the purpose of publishing such content on the internet.  Earth.com, Inc. has built its database of articles, research, and information for over seven years by hiring various individuals on a contract basis to research and write content.

The two entities independently operate, however, but EarthSnap, Inc. and Earth.com have mutual advertisers. Further, EarthSnap, Inc. and Earth.com are mutual sponsors of each other. This means that anytime someone reviews a page on Earth.com, it sees the link to launch the EarthSnap App, and can automatically download the App. Likewise, anytime someone opens their App, they

2

are provided with links to Earth.com, which they can click in order to get to that website. Each business can potentially steer millions of users to each other through this process. Also, Earth.com, Inc's library of webpages provides the information needed for EarthSnap's App to function. EarthSnap is somewhat dependent upon Earth.com's operations.

An accurate summary of the Earth.com, Inc. and EarthSnap businesses was recently published in USA Today on June 27, 2023, as written by Jon Stojan:

### Surging Greenhouse Gases Show Need to Grow Awareness and Interest in the Environment, Says EarthSnap Founder Eric Ralls

Despite numerous global commitments to lower greenhouse gas emissions and become "carbon-neutral" over the past several years, greenhouse gas emissions are still at an all-time high. Scientists have been sounding the climate alarm for several years, but their pleas have been falling mostly on deaf ears. As such, there is growing consensus that the world will be unable to meet the 1.5°C warming threshold set forth under the 2015 Paris Agreement.

According to Eric Ralls, creator of online natural science resource Earth.com and nature identification app EarthSnap, the general public's apathy to the worsening climate crisis can be partially traced to their lack of knowledge and interest in the environment around them. People are too immersed in technology and, in the case of those living in urban areas, are quite isolated from the natural world and unable to see the incremental changes brought about by a shifting climate.

"Disappointingly, we're not doing anything that we pledged to do in limiting greenhouse gas emissions. Everybody's so distracted with technology and politics that we end up ignoring the looming climate disaster. Having founded several science-based ventures over the years, my goal is to raise awareness and make people interested about the natural environment. But the solutions we create must be in a way that's not preachy or teachy and is fun and accessible to all. It also needs to be in the digital realm, because that's where people's attention is," Ralls said.

This is the reason why Ralls and his team created EarthSnap, an app that uses a smartphone camera to identify various plant and animal species using artificial intelligence. After identification, the app displays information about the species from Earthpedia, an online encyclopedia featured on Earth.com that contains images and details of over 6 million organisms from all over the world. EarthSnap can be used to identify plants, animals, and fungi by analyzing a photo taken by the user using the in-app camera or uploaded from the device's gallery.

3

EarthSnap, which was launched on April 22 to coincide with Earth Day, has been downloaded more than 250,000 times on both Android and iOS operating systems. It is built using the AWS SageMaker machine learning AI platform, which can be molded for various purposes. EarthSnap harnessed the platform by feeding it with its extensive database of millions of species of plant and animal species, and the photos being taken by users also serve to further sharpen the engine.

Ralls has previously created an app called PlantSnap, which identifies plants by taking a picture of a leaf, flower, or other part. He was inspired to create that app when he was at a neighbor's house, and he saw an interesting flower that no one present could identify, and even searching online yielded no helpful results. While similar on the surface, EarthSnap uses a more powerful engine that allows it to identify a wider variety of species of plants, animals, and fungi.

"With EarthSnap and Earthpedia, we aim to build a page for every species of life on the planet, and provide people with as much information as we can. Each photo that users take will also help us populate the encyclopedia and further train our AI engine to better recognize various organisms. We believe in harnessing the power of each user as a citizen scientist. The plant and animal pictures they take will provide population data for organisms, showing whether their numbers are increasing or decreasing. There's also a possibility of a new species being discovered. All of that data collected will be useful for scientists in the future."

Ralls believes that EarthSnap will prove a valuable tool in igniting the public's curiosity and interest about the various organisms around them, and this will hopefully spur them into action to protect the environment.

"Getting people to learn about plants and animals will lead them to appreciate and care about these species and begin seeing the problems faced by the natural world. We hope that this will make them want to take action, such as contacting their representatives and voting for those with coherent plans to protect the environment," Ralls says.

On the same day, June 27, 2023, an Amazon.com blog discussed Earth.com's use of cutting edge technology and details the development of Earth.com and EarthSnap as follows:

AWS Machine Learning Blog

**How Earth.com and Provectus implemented their MLOps Infrastructure with Amazon SageMaker**

4

**by Marat Adayev, Dmitrii Evstiukhin, and James Burdon | on 27 JUN 2023 | in Advanced (300), Amazon SageMaker, Customer Solutions | Permalink | Comments | Share**

This blog post is co-written with Marat Adayev and Dmitrii Evstiukhin from Provectus.

When machine learning (ML) models are deployed into production and employed to drive business decisions, the challenge often lies in the operation and management of multiple models. Machine Learning Operations (MLOps) provides the technical solution to this issue, assisting organizations in managing, monitoring, deploying, and governing their models on a centralized platform.

At-scale, real-time image recognition is a complex technical problem that also requires the implementation of MLOps. By enabling effective management of the ML lifecycle, MLOps can help account for various alterations in data, models, and concepts that the development of real-time image recognition applications is associated with.

One such application is EarthSnap, an AI-powered image recognition application that enables users to identify all types of plants and animals, using the camera on their smartphone. EarthSnap was developed by Earth.com, a leading online platform for enthusiasts who are passionate about the environment, nature, and science.

Earth.com's leadership team recognized the vast potential of EarthSnap and set out to create an application that utilizes the latest deep learning (DL) architectures for computer vision (CV). However, they faced challenges in managing and scaling their ML system, which consisted of various siloed ML and infrastructure components that had to be maintained manually. They needed a cloud platform and a strategic partner with proven expertise in delivering production-ready AI/ML solutions, to quickly bring EarthSnap to the market. That is where Provectus, an AWS Premier Consulting Partner with competencies in Machine Learning, Data & Analytics, and DevOps, stepped in.

This post explains how Provectus and Earth.com were able to enhance the AI-powered image recognition capabilities of EarthSnap, reduce engineering heavy lifting, and minimize administrative costs by implementing end-to-end ML pipelines, delivered as part of a managed MLOps platform and managed AI services.

**Challenges faced in the initial approach**

5

The executive team at Earth.com was eager to accelerate the launch of EarthSnap. They swiftly began to work on AI/ML capabilities by building image recognition models using Amazon SageMaker. The following diagram shows the initial image recognition ML workflow, run manually and sequentially.

(Diagram available upon request)

The models developed by Earth.com lived across various notebooks. They required the manual sequential execution run of a series of complex notebooks to process the data and retrain the model. Endpoints had to be deployed manually as well.

Earth.com didn't have an in-house ML engineering team, which made it hard to add new datasets featuring new species, release and improve new models, and scale their disjointed ML system.

The ML components for data ingestion, preprocessing, and model training were available as disjointed Python scripts and notebooks, which required a lot of manual heavy lifting on the part of engineers.

The initial solution also required the support of a technical third party, to release new models swiftly and efficiently.

**First iteration of the solution**

Provectus served as a valuable collaborator for Earth.com, playing a crucial role in augmenting the AI-driven image recognition features of EarthSnap. The application's workflows were automated by implementing end-to-end ML pipelines, which were delivered as part of Provectus's managed MLOps platform and supported through managed AI services.

A series of project discovery sessions were initiated by Provectus to examine EarthSnap's existing codebase and inventory the notebook scripts, with the goal of reproducing the existing model results. After the model results had been restored, the scattered components of the ML workflow were merged into an automated ML pipeline using Amazon SageMaker Pipelines, a purpose-built CI/CD service for ML.

. . . (some portions of the blog has been removed for brevity)

**Results**

Despite the pressing requirement to develop and implement the AI-driven image recognition features of EarthSnap within a few months, Provectus managed to meet all project requirements within the designated time frame. In just 3 months, Provectus modernized and productionized the

6

ML solution for EarthSnap, ensuring that their mobile application was ready for public release.

The modernized infrastructure for ML and MLOps allowed Earth.com to reduce engineering heavy lifting and minimize the administrative costs associated with maintenance and support of EarthSnap. By streamlining processes and implementing best practices for CI/CD and DevOps, Provectus ensured that EarthSnap could achieve better performance while improving its adaptability, resilience, and security. With a focus on innovation and efficiency, we enabled EarthSnap to function flawlessly, while providing a seamless and user-friendly experience for all users.

As part of its managed AI services, Provectus was able to reduce the infrastructure management overhead, establish well-defined SLAs and processes, ensure 24/7 coverage and support, and increase overall infrastructure stability, including production workloads and critical releases. We initiated a series of enhancements to deliver managed MLOps platform and augment ML engineering. Specifically, it now takes Earth.com minutes, instead of several days, to release new ML models for their AI-powered image recognition application.

With assistance from Provectus, Earth.com was able to release its EarthSnap application at the Apple Store and Playstore ahead of schedule. The early release signified the importance of Provectus' comprehensive work for the client.

"I'm incredibly excited to work with Provectus. Words can't describe how great I feel about handing over control of the technical side of business to Provectus. It is a huge relief knowing that I don't have to worry about anything other than developing the business side."
– Eric Ralls, Founder and CEO of EarthSnap.

The next steps of our cooperation will include: adding advanced monitoring components to pipelines, enhancing model retraining, and introducing a human-in-the-loop step.

**Conclusion**

The Provectus team hopes that Earth.com will continue to modernize EarthSnap with us. We look forward to powering the company's future expansion, further popularizing natural phenomena, and doing our part to protect our planet.

. . .

7

> Provectus helps companies in healthcare and life sciences, retail and CPG, media and entertainment, and manufacturing, achieve their objectives through AI.
>
> Provectus is an AWS Machine Learning Competency Partner and AI-first transformation consultancy and solutions provider helping design, architect, migrate, or build cloud-native applications on AWS.
>
> . . .
>
> **About the Authors**
> Marat Adayev is an ML Solutions Architect at Provectus
> Dmitrii Evstiukhin is the Director of Managed Services at Provectus
> James Burdon is a Senior Startups Solutions Architect at AWS

However, despite EarthSnap, Inc. and Earth.com, Inc.'s mutual goal to design and invent tools to create global awareness and appreciation about the environment, financial issues have caused significant delays in development and growth.

One of the main delays was caused by pre-Petition Date litigation. On March 17, 2021, PlantSnap, Inc. ("PlantSnap") initiated litigation against Earth.com, Inc. and Eric Ralls, individually, in the Combined Court for San Miguel County, Colorado, asserting a number of claims, including claims for fraudulent conveyances against the Debtor. Third-party plaintiff, DEJ Partners, LLC ("DEJ") later asserted claims against EarthSnap, Inc. and DEM. The defendants were defending against the various claims on a pre-petition basis.

The attorney fees incurred in connection with the litigation caused a significant financial strain on Earth.com, Inc. and EarthSnap, Inc. The time required to focus on the litigation further limited Mr. Rall's ability to focus on developing the Earth.com, Inc. and EarthSnap, Inc. businesses, further causing financial strain and severely limited their development and significantly delaying the launch of the App.

As a result of the financial strain, Earth.com, Inc. and EarthSnap, Inc. could no longer afford representation in the pending state court litigation, its attorneys withdrew, and the companies faced default judgments because they no longer had an attorney to defend the claims. Both Earth.com, Inc. and EarthSnap, Inc. were forced to file separate voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on April 19, 2023. This allowed the companies to obtain relief from the continued cost, time, and stress of the litigation. Mr. Ralls also filed his own voluntary petition under Chapter 11 of the Bankruptcy Code on the same day.

The Debtor is still investigating to determine whether there are any claims arising under Chapter 5 of the Bankruptcy Code.

## III.   PLAN OVERVIEW AND CLASSIFICATION OF CLAIMS AND INTERESTS

***Overview of Plan Treatment***

| CLASS | STATUS | TREATMENT |
|---|---|---|
| Class 1-A - Allowed Administrative Claims | Unimpaired | Allowed Administrative Claims will be paid in full on the Effective Date or as otherwise agreed to between the Debtor and the implicated Claimant. |
| Class 1-B – Allowed Priority Tax Claims | Unimpaired | Allowed Priority Tax Claims, to the extent they exist, will be paid in full on the Effective Date. |
| Class 2 – Allowed Unsecured Claims | Impaired | Allowed Unsecured Claims shall be paid a percentage of the Debtor's gross income for a period of not more than two years. The Debtor shall market and sell its assets no more than two years after the Effective Date of the Plan, and proceeds of such sale shall be paid to creditors on a pro-rata basis. |
| Class 3 Allowed Equity Interests | Unimpaired | Digital Earth Media, Inc., which holds 100% of the equity interest in Debtor, will retain its interest in the Reorganized Debtor. |

## IV.   DESCRIPTION OF ASSETS

Debtor owns and operates the EarthSnap App. The App is an application that users download to their mobile phones or computers for the purpose of interacting with the earth, nature, animals, bugs, and almost anything else that can be found in nature. Users can use the App to attempt to identify any particular natural object. The cost to download the App is free. If users do not pay the subscription costs of the App, then users will be subject to advertising while viewing the App. The Debtor generates income either through user interface with the App and related advertisements, or through collecting subscription fees from the user.

## V.   UNCLASSIFIED CLAIMS

9

### A.  UNCLASSIFIED PRIORITY CLAIMS

Claims which are more particularly defined under Section 507(a)(1), 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and will be paid in full on the Effective Date of the Plan.  These claims consist of administrative expenses incurred during the course of the Chapter 11 case, claims incurred in an involuntary case (which are not applicable) and certain priority tax claims.

### B.  CLASS 1-A: ALLOWED ADMINISTRATIVE EXPENSE CLAIMS

The Debtor hired the law firm of Kutner Brinen Dickey Riley, P.C. ("KBDR"). KBDR as Bankruptcy counsel to represent it in this case. KBDR received a retainer of $10,262 in the case.  The amount owed to KBDR after application of the retainer is anticipated to be approximately $15,000.

The Subchapter V Trustee, Joli Lofstedt is anticipated to be owed approximately $5,000 for compensation as the Subchapter V trustee at the end of the case.

### C.  CLASS 1-B: ALLOWED PRIORITY TAX CLAIMS

Debtor listed two (2) creditors with potential priority tax claims on its Schedules filed in this case: the Colorado Department of Revenue ("CDOR"); and the Internal Revenue Service ("IRS"). The claims were listed with a $0 amount.

CDOR

CDOR has not filed a proof of claim.  Debtor does not believe anything is due and owing to CDOR as a priority tax claim.

IRS

The IRS filed a Proof of Claim in the priority amount of $100.


### VI.  SECURED CLAIMS

The Debtor does not believe there are any secured claims.


### VII.  UNSECURED CLAIMS AND EQUITY

7.1  **CLASS 2.  General Unsecured Creditors.**  Class 2 consists of those unsecured creditors of the Debtor who hold Allowed Claims that were either scheduled by the Debtor as undisputed, or subject to timely proofs of claim to which the Debtor does not successfully object.  A list of the Class 2 claimants is attached hereto as Exhibit

10

1.  As noted in Exhibit 1, there are a total of $13,012.388 in general unsecured claims. Of the total amount, approximately $11 million constitutes a disputed pre-petition litigation claim, $266,916 constitutes a reverse alter ego claim related to a judgment against Eric Ralls, and $1,246,000 constitutes another reverse alter ego claim for promissory notes in favor of DEM.  Allowed claims in Class 2 will be paid in two steps.

      7.1.1   The first step is a portion of gross revenue paid to Class 2 on a pro-rata basis. The Debtor will pay 5% of gross revenue on a monthly basis into a segregated bank account to be held for the benefit of Class 2. The first deposit shall be made on the 15th day of the first full month following the Effective Date of the Plan. After 12 deposits have been made, the Debtor shall disburse such funds on a pro-rate basis to all Class 2 Allowed Claims.  Any disputed claims will be paid in full within seven (7) days after entry of a final, unappealable order allowing the claim.

      7.1.2   The second step is payment to Class 2 on a pro-rata basis from the net proceeds received from the sale of the Debtor's asset, the EarthSnap App. Such sale is anticipated to be completed within 2 years of the Effective Date of the Plan. Disbursement of such net proceeds shall be paid to Class 2 Allowed Claims within 30 days of final payment on the sale of the App.

    7.2   **Class 3.  Interests in EarthSnap, Inc.**  Class 3 includes the interests in EarthSnap, Inc. held by the sole pre-confirmation shareholder – Digital Earth Media, Inc. Class 3 is unimpaired by this Plan.  On the Effective Date of the Plan, Class 3 Interest Holders shall retain their interests in EarthSnap, Inc. which they owned prior to the Petition Date.

## VIII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    8.1   EarthSnap, Inc. assumes, the following executory contracts and unexpired leases as of the Effective Date:

    8.2   All contracts and leases previously assumed or for which a motion to assume is pending;

    8.3   All leases and contracts that are not specifically rejected, including insurance contracts and open customer contracts.

8.4     EarthSnap, Inc. will be conclusively deemed to have rejected all executory contracts and unexpired leases for which a motion to reject has been granted or is pending as of the Effective Date.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **45** days after the date of the order confirming this Plan.

## IX.     <u>FEASIBILITY OF THE PLAN</u>

EarthSnap, Inc.'s Plan is feasible.  The Debtor's post-Petition Date efforts have demonstrated the ability to first launch the App post-Petition Date, as well as generate income through subscriptions and advertising. This income will be used to fund the Debtor's operations, and will also be used to pay Class 2 funds on a post-confirmation basis for a period of approximately two years, or less if the Debtor is able to sell the App sooner.  There is no current pending buyer, and the Debtor believes that additional time will allow it to generate the type of income to attract a larger sales price.

Based on the filed claims in this case, outstanding claims are:

| | |
|---|---|
| Secured Claims | $0 |
| Administrative Claims | $15,000 (estimated) |
| General Unsecured Claims | Approximately $13 million, of which $12.5 million are either contingent, disputed, or subject to setoff (litigation claims and alter ego claims) |

Even in the event the contingent and disputed claims are allowed in their entirety, the total universe of claims is approximately $13 million.

In light of the above, the Plan is feasible as proposed.

## X.     <u>LIQUIDATION ANALYSIS</u>

The principal alternative to a Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code.  Chapter 7 requires the liquidation of the Debtor's assets by a Trustee who is appointed by the United States Trustee's office.  In a Chapter 7 case, the

Chapter 7 Trustee would take over control of the Debtor's assets. The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities.

The Debtor has no current prospective buyer for its main asset, the App. In connection with the App, the Debtor owns various domain names, trademarks, and patents. The value of these assets will increase with the success of the App. The Debtor currently has very little in cash. Therefore, its current asset value is close to $0. In the event the case was converted to a Chapter 7, and a Chapter 7 trustee was placed in charge selling the Debtor's assets, any significant sale would not occur without substantial growth of the App. Without this time for growth, the sale of the app is estimated to generate a gross sales price of $1.5 million. Conversely, in two years, the Debtor estimates the App's value to increase to over $10 million based on its potential and current rate of growth. Attached as Exhibit 2 is the Debtor's liquidation analysis. Based on this analysis, creditors will receive a very small percentage of their claims in a Chapter 7 case compared with the anticipated payments pursuant to this Plan.

## XI.   TAX CONSEQUENCE

The Debtor is not providing tax advice to creditors or interest holders. **U.S. Treasury Regulations require you to be informed that, to the extent this section includes any tax advice, it is not intended or written by the Debtor or its counsel to be used, and cannot be used, for the purpose of avoiding federal tax penalties.** Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation. Generally, unsecured creditors should have no tax impact as a result of Plan confirmation. The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year in which case income may have to be recognized. Interest holders may have very complicated tax effects as a result of Plan confirmation.

## XII.   IMPLEMENTATION OF THE PLAN

11.1 - **Effectuating the Plan.** On the Effective Date of the Plan, Mr. Eric Ralls, the CEO of the Debtor, shall be appointed pursuant to 11 U.S.C.§1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan.

11.2 -  **Effective Date.**  The Plan will become effective on the date the Bankruptcy Court enters its Order confirming the Plan and said Order becomes final and non-appealable (the "Effective Date").

11.3 -  **Disputed Claims.**  Any claimant or the Debtor may file an objection to any claim no later than 45 days following the Effective Date.  The Debtor shall have standing to commence and prosecute any objection to claim.

11.4 -  **Administrative Expense Bar Date.**  Any creditor seeking allowance and payment of an administrative expense priority claim must do so no later than 45 days following the Effective Date.

11.5 -  **Final Decree.**  Debtor will request entry of a final decree within 180 days of the Effective Date.

11.6 -  **Post Confirmation Reporting.**  Following confirmation of the Plan, upon request of any party in interest, Debtor shall provide quarterly financial statements summarizing all distributions made in accordance with the Plan.  To the extent the Plan is subject to a non-consensual confirmation, the Subchapter V Trustee shall make all distributions, and the Subchapter V Trustee shall file post-confirmation quarterly reports with the Bankruptcy Court, and shall mail a copy of such reports to the Office of the United States Trustee.

11.7 -  **Discharge.** If Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that Debtor will not be discharged of any debt:

(i) imposed by this Plan; or
(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed through a nonconsensual confirmation under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code, and the creditors' rights in the event of default may be greater the Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule

14

4007(c) of the Federal Rules of Bankruptcy Procedure.

11.8 - **Contractual Relationship.**   The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtor and its creditors.  In the event of a default by the Debtor under the Plan, including failure to timely file and pay any post-petition taxes, creditors shall be entitled to enforce all rights and remedies against the Debtor for breach of contract, the Plan.  Any secured creditor claiming a breach of the Plan by the Debtor will be able to enforce all of their rights and remedies including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document.  Any creditor claiming a breach by the Debtor must provide written notice to the Debtor and its counsel of the claimed default, the notice must provide the Debtor a ten (10) day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan.  Upon the Debtor's failure to cure the default within such ten-day period, the creditor may proceed to exercise their rights and remedies under applicable State and Federal Law, including seeking to enforce the terms of the Plan or conversion of Debtor's case to a case under Chapter 7.   In the event the Debtor's Plan is confirmed through a nonconsensual confirmation under 11 U.S.C. § 1191(b), creditors may have greater rights in the event of default, as debts are not discharged until the completion of all payments due within the first three years of the Plan.

11.9 - **Executory Contracts and Unexpired Leases.**   All executory contracts and unexpired leases which were entered into by the Debtor pre-petition, and not assumed by order of the Bankruptcy Court, are assumed as of the Effective Date of the Plan.

11.10 -   **Revestment.**  The entry of an Order confirming this Plan shall revest in the Debtor all property of the respective estates free and clear of all liens except those specifically set forth in the Plan.

11.11 -   **Retention of Jurisdiction**.  Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

    a.    Determination of the allowability of claims upon objection to such claims by the Debtor-in-Possession or by any other party in interest;

    b.    Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(1), including compensation of the parties entitled thereto;

    c.    Resolution of any disputes regarding interpretation of the Plan;

15

d.      Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

e.      Modification of the Plan pursuant to 11 U.S.C. §1193;

f.      Adjudication of any causes of action, including avoiding powers actions, brought by the Debtor-in-Possession, by the representative of the estate or by a Trustee appointed pursuant to the Code;

g.      Adjudication of any cause of action brought by the Debtor-in-Possession, by a representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in 11 U.S.C. §542-549.  This section shall not be construed to limit any other power or right which the Debtor may possess under any section of the Code and

h.      Entry of a final decree.

11.12 - **Satisfaction of Claims.**  Except as otherwise required by or provided in this Plan, the Debtor shall receive a discharge on the confirmation date pursuant to Section 1141(d). Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan.  Any obligation or note, previously in default, so modified, shall be cured as modified as of the Confirmation Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.13 - **Headings**.  The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan

11.14 - **Notices.**  All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified.  All communications will be deemed delivered when received at the following addresses:

a.      EarthSnap, Inc.


With a copy to:
Jenny M.F. Fujii, Esq.
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln St., Suite 1720

16

Denver, CO 80264
Email: jmf@kutnerlaw.com

b.    To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, otherwise, at the address set forth for the claimant in the Debtor's Schedules filed with the Court..

11.15 - **Unclaimed Payments**.  If a person or entity entitled to receive a payment or distribution pursuant to this Plan, exclusive of the IRS, fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth above, within one (1) year of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

11.16 - **Subchapter V Trustee and Plan Payments**.  If this Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Trustee's services shall be terminated at such time as the Plan has been substantially consummated.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Trustee shall continue to serve as Trustee, and shall accept Plan payments from the Debtor and convey said payments as provided herein.

11.17 - **Substantial Consummation**.  Pursuant to 11 U.S.C. § 1183(c)(2), within fourteen (14) days after the Plan has been substantially consummated, the Debtor shall file a notice of the same with the Court, and serve the Subchapter V trustee, the United States trustee, and all parties in interest.

## XIII.   CONFIRMATION REQUEST

The Debtor, as proponent of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. §1191(a).  The Court may confirm the Plan pursuant to § 1191(b) if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired under, and has not accepted, the Plan.

DATED:  July 18, 2023                          **EARTHSNAP, INC.**

                                               By: _s/  Eric Ralls_____
                                                  Eric Ralls, CEO

APPROVED AS TO FORM:

_s/ Jenny M.F. Fujii_____
Jenny M.F. Fujii, #30091
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln St., Suite 1720
Denver, CO 80264
Telephone:  303- 832-2400
Email: jmd@kutnerlaw.com

ATTORNEYS FOR EARTHSNAP INC.

# APPENDIX

## DEFINITIONS

Administrative Claim shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estates under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2) of the Bankruptcy Code.

Allowed Claim shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this case or scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

Allowed Secured Claim shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

Avoidance Actions means each Debtor's estate's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of

the Bankruptcy Code, or under any other applicable law, or otherwise subject to equitable subordination under §510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

Claim shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

Class shall mean any Class into which Allowed Claims are classified pursuant to Article III.

Class 1-3 and Claims and Interests shall mean the Allowed Claims and Interests so classified in Part III.

Code shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

Confirmation Date shall mean the date upon which the Order of Confirmation is entered by the Court.

Court shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

Disputed Claim shall mean any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with this case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

Effective Date of the Plan shall mean fourteen days after the date on which the Order of Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

Order of Confirmation shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

20

Petition Date shall mean the date on which the voluntary petition was filed by the Debtor on April 19, 2023.

Plan shall mean this Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced herein or therein.

Priority Claim shall mean any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

Professional Fees shall mean the Administrative Claims for compensation and reimbursement submitted pursuant to Section 330, 331 and 503(b) of the Code by a Professional Person.

Rules shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

Tax Claim shall mean any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

Unclassified Priority Claims shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 123 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

Other Definitions.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein