# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>ERIC RALLS,<br><br>Debtor. | Bankruptcy Case No. 23-11620 TBM<br>Chapter 11 (Subchapter V) |
| In re:<br><br>EARTH.COM, INC.,<br><br>Debtor. | Bankruptcy Case No. 23-11621 TBM<br>Chapter 11 (Subchapter V) |
| In re:<br><br>EARTHSNAP, INC.,<br><br>Debtor. | Bankruptcy Case No. 23-11622 TBM<br>Chapter 11 (Subchapter V) |

## ORDER GRANTING RELIEF FROM STAY TO CONTINUE PENDING LITIGATION

## I.      Introduction.

This matter comes before the Court on a series of motions for relief from stay, joinders, and objections filed in three related (but not jointly administered) bankruptcy cases:  *In re Eric Ralls*, Case No. 23-11620 (Bankr. D. Colo.) (the "*Ralls* Case"); *In re Earth.com, Inc.*, Case No. 23-11621 (Bankr. D. Colo.) (the "*Earth.com* Case"); and *In re EarthSnap, Inc.*, Case No. 23-11622 (Bankr. D. Colo.) (the "*EarthSnap* Case").  The Court sometimes refers to the *Ralls* Case, the *Earth.com* Case, and the *EarthSnap* Case collectively as the "Bankruptcy Cases."  The motions for relief from stay, joinders, and objections at issue in the Bankruptcy Cases are:

    (1)    *Ralls* Case.

        (a)    "PlantSnap Inc.'s Motion for Relief from the Automatic Stay"[1] filed by PlantSnap, Inc. ("PlantSnap") in the *Ralls* Case (the "*Ralls* Case MFRS").

        (b)    "DEJ Partners, LLC's Joinder in PlantSnap Inc.'s Motion for Relief from the Automatic Stay"[2] filed by DEJ Partners, LLC ("DEJ Partners") in the *Ralls* Case (the "*Ralls* Case Joinder"); and

        (c)    Objection to the *Ralls* Case MFRS[3] filed by Eric Ralls ("Ralls") in the *Ralls* Case (the "*Ralls* Case Objection").

    (2)    *Earth.com* Case.

        (a)    "PlantSnap Inc.'s Motion for Relief from the Automatic Stay"[4] filed by PlantSnap in the *Earth*.com Case (the "*Earth.com* Case MFRS");

        (b)    "DEJ Partners, LLC's Joinder in PlantSnap Inc.'s Motion for Relief from the Automatic Stay"[5] filed in the *Earth*.com Case (the "*Earth.com* Case Joinder"); and

        (c)    Objection to the *Earth.com* MFRS[6] filed by Earth.com Inc. ("Earth.com") in the *Earth.com* Case (the "*Earth.com* Case Objection").

    (3)    *EarthSnap* Case.

        (a)    "DEJ Partners, LLC's Motion for Relief from the Automatic Stay"[7] filed by DEJ Partners in the *EarthSnap* Case (the "*EarthSnap* Case MFRS"); and

---

[1]    *Ralls* Case Docket No. 25.  The Court uses the convention "*Ralls* Case Docket No. ___" to refer to documents filed in the CM/ECF system in the *Ralls* Case.  The Court uses the convention "Ex. ___" to refer to exhibits admitted into evidence at the Joint Preliminary Hearing in the Bankruptcy Cases conducted on June 1, 2023.  The Court takes judicial notice of the docket in the *Ralls* Case.  *See St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and the facts that are part of public records).

[2]    *Ralls* Case Docket No. 29.

[3]    *Ralls* Case Docket No. 35.

[4]    *Earth.com* Case Docket No. 24.  The Court uses the convention "*Earth.com* Case Docket No. ___" to refer to documents filed in the CM/ECF system in the *Earth.com* Case.  The Court uses the convention "Ex. ___" to refer to exhibits admitted into evidence at the Joint Preliminary Hearing in the Bankruptcy Cases conducted on June 1, 2023.  The Court takes judicial notice of the docket in the *Earth.com* Case.  *See St. Louis Baptist Temple*, 605 F.2d at 1172.

[5]    *Earth.com* Case Docket No. 30.

[6]    *Earth.com* Case Docket No. 35.

[7]    *EarthSnap* Case Docket No. 22.  The Court uses the convention "*EarthSnap* Case Docket No. ___" to refer to documents filed in the CM/ECF system in the *EarthSnap* Case.  The Court uses the

(b) Objection to the *EarthSnap* MFRS[8] filed by EarthSnap Inc. ("EarthSnap") in the *EarthSnap* Case (the "*EarthSnap* Case Objection").

The foregoing motions for relief from stay, joinders, and objections involve common parties, facts, and law. Accordingly, for ease of reference, the Court sometimes refers to:

- Ralls, Earth.com, and EarthSnap collectively as the "Debtors";

- PlantSnap and DEJ Partners collectively as the "Movants";

- The *Ralls* Case MFRS, the *Earth.com* Case MFRS, and the *EarthSnap* Case MFRS collectively as the "Motions";

- The *Ralls* Case Joinder and the *Earth.com* Case Joinder collectively as the "Joinders"; and

- The *Ralls* Case Objection, the *Earth.com* Case Objection, and the *EarthSnap* Case Objection collectively as the "Objections."

The Court recently conducted a Joint Preliminary Hearing on the Motions, Joinders, and Objections. For the reasons set forth below, the Court grants the Motions and Joinders and permits the Movants to continue with prosecution of certain pre-bankruptcy litigation through judgment.

## II.     <u>Jurisdiction and Venue.</u>

The Court has jurisdiction to enter final judgment on the Motions, Joinders, and Objections pursuant to 28 U.S.C. §§ 157 and 1334. The disputes over the Motions, Joinders, and Objections are core proceedings under 28 U.S.C. §§ 157(b)(2)(a) (matters concerning administration of the estate), (b)(2)(G) (motions to terminate, annul, or modify the automatic stay), and (b)(2)(O) (proceedings affecting liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. No party has contested the Court's jurisdiction or venue.

---

convention "Ex. ___" to refer to exhibits admitted into evidence at the Joint Preliminary Hearing in the Bankruptcy Cases conducted on June 1, 2023. The Court takes judicial notice of the docket in the *EarthSnap* Case. *See St. Louis Baptist Temple*, 605 F.2d at 1172.

[8]       *EarthSnap* Case Docket No. 30.

### III.     Procedural Background.

On April 19, 2023, Ralls and two related companies, Earth.com and EarthSnap, filed separately for protection under Chapter 11, Subchapter V of the Bankruptcy Code[9]: the *Ralls* Case, the *Earth.com* Case, and the *EarthSnap* Case.  The Bankruptcy Cases are not jointly administered.

On May 8, 2023, PlantSnap submitted the *Ralls* Case MFRS and the *Earth.com* Case MFRS.  Simultaneously, DEJ Partners filed its Joinders and the *EarthSnap* Case MFRS.  Ralls, Earth.com, and EarthSnap presented Objections to the Motions and Joinders in each of the Bankruptcy Cases on May 25, 2023.  Though the Motions and Joinders, the Movants seek relief from stay under Section 362 to continue to prosecute pre-bankruptcy litigation pending in the District Court for San Miguel County, Colorado (the "State Court") and captioned:   *PlantSnap Inc. v. Ralls et al.*, No. 2021-CV-30005 (Dist. Ct. San Miguel Cty., Colo.) (the "State Court Action").  In the Objections, the Debtors objected to relief from stay under Section 362 and insisted that any disputes between the Movants and the Debtors must be resolved only in this Court.

Consistent with Section 362, Fed. R. Bankr. P. 4001, and L.B.R. 4001-1(c), the Court conducted a Joint Preliminary Hearing on the Motions, Joinders, and Objections on June 1, 2023.  During the Joint Preliminary Hearing, the Movants proffered the testimony of Matt Giblin (current Chief Executive Officer of PlantSnap) and Daniel E. Johnson (sole Member and Manager of DEJ Partners).  The Movants also proffered, and the Court admitted into evidence, Movant's Exhibits 1, 2, 4, 5, 7-9, 11, 12, and 17-29 (for all purposes) and Movant's Exhibits 3, 6, and 13 (only for the limited purpose of showing that certain court filings were made in the State Court Action).  The Debtors proffered the testimony of Ralls.  Ralls is the Debtor in the *Ralls* Case, the former Chief Executive Officer of PlantSnap, as well as the 86-percent owner of Digital Earth Media, Inc. ("DEM"),[10] which is the 100-percent owner of Earth.com and EarthSnap.  The Debtors also proffered the testimony of Robert Kitsmiller of Podoll & Podoll, P.C., and Spencer Kontnik of Kontick Cohen, LLC, both of whom represented the Debtors pre-petition in the State Court Action.  In addition, the Debtors proffered, and the Court admitted into evidence, Debtors' Exhibits A-C and O-S (for all purposes) and Debtors' Exhibits I, M, and N (only for the  limited purpose of showing that certain court filings were made in the State Court Action).  After the completion of the evidentiary proffers from the Movants and the Debtors, the Court entertained fulsome legal argument from counsel for both the Movants and the Debtors.

L.B.R. 4001-1(c)(4), sets forth the procedure for preliminary hearings on motions for relief from stay and provides:

---

[9]     11 U.S.C. § 101 *et seq.*  Unless otherwise indicated, all references to "Section" are to Sections of the Bankruptcy Code.

[10]     At the Joint Preliminary Hearing, counsel for the Debtors proffered testimony that Ralls was the "80 percent owner" of DEM.  However, in his Schedule A/B (Ex. 24), Ralls states that he holds 86 percent of the ownership interest in DEM; therefore, the Court uses the number set forth in Schedule A/B.

> The Court will treat the hearing as a preliminary hearing and,
> based upon the proffers of evidence, if there is a reasonable
> likelihood that the party opposing relief will prevail at a final
> hearing, may set the matter over for a final hearing.  In the
> alternative, the Court may consider the offers of proof and,
> absent the need for an evidentiary hearing, grant or deny the
> request for relief from stay.

At the Joint Preliminary Hearing, both the Movants and the Debtors agreed that the Court could and should decide the Motions, Joinders, and Objections based upon the proffers of testimony and exhibits made at the Joint Preliminary Hearing without the need for a final evidentiary hearing.  Accordingly, the Court concluded at the Joint Preliminary Hearing that no final evidentiary hearing was required.  The Court reiterates again that there are no disputes of material fact necessitating a final hearing.  Instead, the Court can rule on the Motions, Joinders, and Objections based upon the detailed proffers of testimony and exhibits submitted at the Joint Preliminary Hearing.

In the interim since the Joint Preliminary Hearing, the Court has considered the testimony and admitted exhibits and has determined that it should grant the relief requested for the reasons set forth below.

## IV.    Findings of Fact.

The Court makes the following findings of fact under Fed. R. Civ. P. 52(a)(1), as incorporated by Fed. R. Bankr. P. 7052 and 9014(c).[11]  The findings of fact are based on the evidentiary proffers (both testimony and admitted exhibits) of the Movants and the Debtors.  Although a significant amount of evidence was introduced at the Joint Preliminary Hearing, the Court makes only those factual findings relevant for the limited purposes of adjudication of the Motions, Joinders, and Objections under Section 362(d) of the Bankruptcy Code.

### A.    Facts Pertaining to PlantSnap, DEJ Partners' Investment in PlantSnap, and DEJ Partners' Actions With Respect to PlantSnap.

Ralls formed PlantSnap in 2016.  When he formed PlantSnap, Ralls was the majority shareholder, director, and Chief Executive Officer.  PlantSnap is a mobile application that allows users to identify plant species by using mobile phone cameras.  While Ralls was acting as the Chief Executive Officer and under his leadership, PlantSnap grew into a successful application, with tens of millions of downloads.  It

---

[11]    As required by Fed. R. Civ. P. 52(a)(1), as incorporated by Fed. R. Bankr. P. 7052, this Order states "findings of fact specially and conclusions of law separately."  *See S.E.C. v. Anselem Explor. Co.*, 936 F. Supp. 2d 1281, 1285 n.6 (D. Colo. 2013).  "Any finding of fact more properly deemed a conclusion of law, or any conclusion of law more properly deemed a finding of fact, shall be more properly characterized." *Id.*, *see also Kolbe v. Endocrine Servs., P.C.*, 2022 WL 970004 (D. Colo. Mar. 31, 2022).

generated significant revenue from advertisements and partnerships with other companies.

Sometime in early 2017, Ralls contacted DEJ Partners to solicit an investment in PlantSnap. Dan Johnson is the sole Member and Manager of DEJ Partners, which is a California limited liability company. DEJ Partners is an "angel investor," investing in small startup companies that need seed capital. In February of 2017, DEJ Partners became PlantSnap's first major investor. In connection with the investment by DEJ Partners, Ralls executed certain guarantee agreements.

In August 2017, Ralls contacted DEJ Partners and said he could not continue to operate PlantSnap without a company credit card. So, on August 15, 2017, DEJ Partners entered into a credit and reimbursement agreement (the "Amex Agreement"), intending to allow Ralls to use DEJ Partners' American Express card for certain PlantSnap-related business expenses. To secure PlantSnap's obligations under the Amex Agreement, Ralls pledged 750,000 of his shares in PlantSnap stock.

Over the next two years, PlantSnap, Ralls, and DEJ Partners executed numerous agreements in which DEJ Partners loaned money on extended credit to PlantSnap. On September 30, 2019, DEJ Partners entered into a consolidated promissory note with PlantSnap in the principal amount of $9,103,301 (the "Consolidated Note"). To secure PlantSnap's obligation under the Consolidated Note, Ralls again pledged his 750,000 shares in PlantSnap stock.

By February of 2021, PlantSnap was in default under both the Amex Agreement and the Consolidated Note. On February 24, 2021, as Ralls was in the process of negotiating an investment deal between PlantSnap and another company, DEJ Partners sent PlantSnap and Ralls a notice of default and demand for repayment on the Consolidated Note and the Amex Agreement. By this time, the amount owed under the Consolidated Note was $11,398,000, and an additional $978,000 was owed under the Amex Agreement. The loans were payable upon demand and there had been no prior notice of default.

PlantSnap and Ralls did not cure the defaults within five business days as required by the various agreements. Therefore, on March 6, 2021, DEJ Partners sent a letter to Ralls notifying him that DEJ Partners intended to exercise its right to foreclose Ralls' 750,000 shares in PlantSnap stock. On March 8, 2021, following receipt of a completed stock power and confirmation that Ralls had received the March 2, 2021 letter, PlantSnap transferred the 750,000 shares from Ralls to DEJ Partners on PlantSnap's stock ledger. As a result of the transfer, DEJ Partners became PlantSnap's majority shareholder. Ralls contends that the shares, when transferred, had a value of approximately $27 million.

The next day, March 9, 2021, DEJ Partners provided PlantSnap with a signed written consent that removed Ralls as director from PlantSnap's board of directors. That same day, PlantSnap's board of directors issued a written consent pursuant to

which Ralls was removed as an officer of PlantSnap.  Matt Giblin became Chief Executive Officer of PlantSnap the same day.  About a week later, PlantSnap initiated the State Court Action.  As the State Court Action proceeded over the last few years, Ralls turned his attention to other endeavors, focusing primarily on creating and growing Earth.com, a large, web-based index containing a wealth of nature-related news and topics.  He also developed EarthSnap, a mobile application that can identify any sort of plant or animal.  The application generally links back to Earth.com's database.

**B.    Facts Pertaining to the State Court Action.**

On March 17, 2021, PlantSnap commenced the State Court Action against Ralls and Earth.com by filing a "Verified Complaint and Jury Demand" (the "Complaint").[12]  In its Complaint, PlantSnap asserted ten claims for relief, including: a claim for declaratory judgment that Ralls had been removed as an officer and director of PlantSnap; a claim for conversion against Ralls and Earth.com; a claim for civil theft against Ralls and Earth.com; a claim for breach of fiduciary duties against Ralls; a claim for aiding and abetting breach of fiduciary duties against Earth.com; a claim for fraud against Ralls; a claim for unjust enrichment against Ralls and Earth.com; and a claim for tortious interference with contractual relationships against Ralls.  The underlying basis for PlantSnap's Complaint was that Ralls and his related entity, Earth.com, were stealing from PlantSnap and using PlantSnap to engage in widespread, years-long fraudulent activity.  In the Complaint, PlantSnap sought imposition of a constructive trust against Ralls and Earth.com for PlantSnap's benefit, as well as a temporary restraining order and/or preliminary injunction against Ralls enjoining Ralls from acting on behalf of PlantSnap and ordering Ralls to immediately turn over access to PlantSnap's accounts.

On April 6, 2021, Ralls and Earth.com filed "Eric Ralls' and Earth.com's Verified Answer to PlantSnap, Inc.'s Verified Complaint and Eric Ralls' Verified Counterclaims Against PlantSnap, Inc. and Third-Party Defendants Daniel E. Johnson and DEJ Partners, LLC" (the "Answer and Counterclaims")[13] in the State Court Action.  On September 28, 2021, Ralls submitted "Eric Ralls' Amended Verified Counterclaims Against PlantSnap, Inc. and Third-Party Defendants Daniel E. Johnson and DEJ Partners, LLC" (the "Amended Counterclaims")[14] in the State Court Action.  Through the Amended Counterclaims, Ralls asserted a claim for declaratory judgment against PlantSnap and DEJ Partners.  Specifically, Ralls alleged that: Ralls was entitled to a declaratory judgment that PlantSnap, DEJ Partners, and Ralls were required to determine the value of PlantSnap's shares; Ralls was entitled to an equitable accounting of amounts owed to him by PlantSnap and DEJ Partners and that amounts were owed to him; and Ralls was entitled to declaratory judgment that he continued to retain a controlling interest in PlantSnap.  In the Amended Counterclaims, Ralls asserted a claim for unjust enrichment against DEJ Partners; a derivative claim for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, and corporate waste against Daniel Johnson and DEJ Partners; a claim for unclean hands against DEJ Partners; and a claim for indemnity and advancement against PlantSnap.  Further,

---

[12]    Ex. 3.
[13]    Ex. I.
[14]    Ex. 6.

Ralls sought entry of a temporary restraining order and preliminary injunction against PlantSnap and DEJ Partners, enjoining them from claiming ownership of PlantSnap or claiming to take actions on PlantSnap's behalf.  Such claim was predicated on the premise that Ralls pledged only 100,000, rather than 750,000 shares of stock of PlantSnap as collateral such that DEJ Partners had wrongfully seized and converted Ralls' 750,000 shares of PlantSnap stock and had acted *ultra vires* in removing Ralls as director and officer of PlantSnap.

On April 27, 2021, the State Court entered a 16-page "Combined Order re: Plaintiff's and Defendant's Motions for Preliminary Injunctions" (the "Combined Order")[15] in the State Court Action in which it made 41 findings of fact.  In the Combined Order, the State Court found that that DEJ Partners was entitled to foreclose upon all 750,000 shares of stock in PlantSnap and that Ralls was properly removed from the PlantSnap board of directors.  The State Court further found that, even though Ralls had been removed properly, Ralls had locked Matt Giblin out of PlantSnap's accounts and continued to hold himself out to vendors as Chief Executive Officer of PlantSnap.  The State Court determined that "Ralls' actions have completely undermined the effective operations of PlantSnap" and that PlantSnap could not "continue to function" in the absence of injunctive relief.  The State Court further found that Ralls would suffer no immediate, irreparable harm that could be cured with injunctive relief, among other things.  The State Court, therefore, granted PlantSnap's motion for preliminary injunction and denied Ralls' request for relief.  The State Court ordered:

(1)     Ralls shall be immediately enjoined from acting on behalf of PlantSnap and representing to any third parties that he is currently affiliated with PlantSnap and;

(2)     Ralls shall immediately turn over complete access to all of PlantSnap's Accounts to PlantSnap's current CEO or other designee.  Such Accounts include, but are not limited to: Alpine Bank, Amazon Web Services, Apple App Store Connect, Clever Tape, Drop Box, Facebook, Firebase, GoDaddy, Google Pay Console, Google Workspace (GSuite), Huawei HMS Store, Imagga, Instagram, No Marker, Pinterest, Quickbooks, and Singular.

Additionally, the State Court ordered that neither PlantSnap nor DEJ Partners could transfer or otherwise encumber the 750,000 PlantSnap shares foreclosed upon during the pendency of the State Court Action.

On July 28, 2021, the State Court entered its "Amended Case Management Order,"[16] in the State Court Action.  The State Court set many pretrial deadlines and set the dispute for a trial in 2022 (which trial date was later reset).  Thereafter, the parties commenced discovery in the State Court Action, in a process that spanned two years.

---

[15]     Ex. 4.
[16]     Ex. 5.

During discovery in the State Court Action, PlantSnap produced 1,921,514 pages of documents; DEJ Partners produced 20,785 pages of documents, and Ralls and the related defendants produced a 1.5 gigabyte hard drive with an assortment of documents.  Further, Ralls, individually, and as the Colo. R. Civ. P. Rule 30(b)(6) representative of Earth.com, invoked his privilege against self-incrimination under the Fifth Amendment of the United States Constitution 279 times during depositions taken March 26 and 27, 2022.

DEJ Partners learned through discovery that Ralls had formed three new entities during the pendency of the State Court Action, including:  EarthSnap, and two non-debtor companies, DEM and Metaversal Knowledge, Inc. ("Metaversal").  DEJ Partners was granted leave by the State Court to join the three new entities that Ralls had formed in the State Court Action.  Over Ralls' objection, the State Court also permitted DEJ Partners to assert new counterclaims against all the defendants, and to bring claims against the two new entities.

Therefore, on September 23, 2021, DEJ filed "DEJ Partners, LLC's Second Amended Counterclaims and Third-Party Complaint (the "Counterclaims and Third-Party Complaint")[17] in the State Court Action, asserting claims against Ralls, Earth.com, EarthSnap, DEM, and Metaversal.   In the Counterclaims and Third-Party Complaint, DEJ Partners advanced a claim under the Colorado Organized Crime Control Act, Colo. Rev. Stat. § 18-17-104, against Ralls, Earth.com, EarthSnap, DEM, and Metaversal.  DEJ Partners also asserted:  a claim against Ralls and Earth.com under the Colorado Uniform Fraudulent Transfer Act, Colo. Rev. Stat. § 38-8-105 *et seq.*; a separate claim against Ralls, Earth.com, EarthSnap, DEM, and Metaversal, directly and derivatively under the Colorado Uniform Fraudulent Transfer Act, Colo. Rev. Stat. § 38-8-105 *et seq.*; a claim for fraudulent inducement against Ralls; two claims for breach of contract against Ralls (one for breach of the Amex Agreement and one for breach of the Consolidated Note); and a claim for specific performance against Ralls.

The State Court entered an Order granting a stipulation to dismiss Ralls' counterclaim seeking a temporary restraining order and preliminary injunction on April 10, 2022.[18]  At some point, the State Court also dismissed the claims against Daniel E. Johnson in his individual capacity.  The State Court further entered two "Amended Case Management Orders"[19] resetting the trial date in the State Court Action for an eight-day jury trial commencing on June 5, 2023.

On February 28, 2023, PlantSnap filed a motion for partial summary judgment[20] in the State Court Action.  In PlantSnap's partial summary judgment motion, PlantSnap sought entry of judgment against Ralls on its claim for a determination that Ralls was properly removed as an officer and director of PlantSnap.  It also sought judgment in the amount of $2,115,000 against Ralls and Earth.com on its claims for civil theft and

---

[17] Ex. 13.
[18] Ex. 8.
[19] Ex. 12 and 17.
[20] Ex. 19.

conversion.[21]  On the same day that PlantSnap filed its motion for partial summary judgment, DEJ Partners also filed a motion for partial summary judgment in the State Court Action.  DEJ Partners sought summary judgment on its claim against Ralls for breach of the Amex Agreement.

On April 12, 2023, the State Court entered an Order allowing counsel for Earth.com, EarthSnap, DEM, and Metaversal (Robert Kitsmiller of Podoll & Podoll P.C.) to withdraw from representation of those entities.  Rall's counsel withdrew earlier.  Not long thereafter, on April 14, 2023, PlantSnap and DEJ Partners filed a "Joint *Forthwith* Motion for Entry of Default" asserting that Earth.com, EarthSnap, DEM, and Metaversal were unrepresented, noting that they could not  appear or act in a judicial proceeding without counsel, and arguing that because they were unrepresented, they were failing to defend themselves in the State Court Action such that default should enter against them.  On April 17, 2023, the State Court entered an Order allowing Earth.com, EarthSnap, DEM, and Metaversal to respond to PlantSnap and DEJ Partners' motion for entry of default.[22]

While the motion for entry of default was pending, on April 18, 2023, the State Court granted DEJ Partners' motion for partial summary judgment, in part, ruling that "Ralls is liable to [DEJ] under a breach of contract theory for $978,043.23 . . . ."[23]

 On April 19, 2023, one day after entry of the order granting, in part, DEJ Partners' motion for partial summary judgment, Ralls, Earth.com, and EarthSnap filed their Petitions for relief in the Bankruptcy Court, commencing the Bankruptcy Cases under Chapter 11 Subchapter V.  At the time the Bankruptcy Cases were filed, the State Court had not yet ruled upon PlantSnap's motion partial for summary judgment. [24]

The Debtors' bankruptcy Petitions stayed the State Court Action as against Ralls, Earth.com, and EarthSnap.  At the time that the Bankruptcy Cases were filed, the following deadlines in the State Court Action remained:  (1) witness and exhibit lists due by April 24, 2023; (2) jury instructions and the proposed trial management order due by May 19, 2023; (3) the trial management conference set for May 26, 2023; and (4) the eight-day jury trial beginning on June 5, 2023.[25]  By April 19, 2023, all other pre-trial deadlines in the State Court Action had expired.  Ralls, Earth.com, and EarthSnap had not endorsed any expert witnesses prior to the deadline in the State Court Action.

---

[21]     This amount represents the $705,000 from investors that Ralls allegedly stole from PlantSnap, trebled pursuant to Colo. Rev. Stat. § 18-4-405.

[22]     Ex. 22.

[23]     Ex. 23 at 6.

[24]     At the Joint Preliminary Hearing in the Bankruptcy Cases, counsel for PlantSnap suggested that if the Court were not inclined to grant relief from the stay to allow PlantSnap and DEJ Partners to complete the State Court Action, the Court ought at least to grant relief from stay to permit the State Court to rule on the pending motion for summary judgment filed by PlantSnap.  Since the Court has determined that it should grant relief from the stay to allow the State Court Action to continue through judgment, it need not consider this request.

[25]     Ex. 17.

The foregoing is a partial recitation of the history of the State Court Action.  There is a lot more.  The full docket as well as many more pleadings, motions, objections, and orders were admitted into evidence at the Joint Preliminary Hearing and have been considered by the Court.  Suffice to say that the Movants, the Debtors and others (DEM and Metaversal) have been engaged in an extensive legal battle for many years, all set to culminate in a lengthy jury-trial starting on June 5, 2023.

## C.    The Bankruptcy Filings

During the course of the State Court Action, Ralls and Earth.com spent hundreds of thousands of dollars in attempting to defend against the various claims asserted by PlantSnap and DEJ Partners.  Despite spending significant amounts on attorney fees, the defense ultimately was inadequate or unsuccessful.  Ralls and Earth.com did not have money to afford to retain experts for the defense in the State Court Action, nor to engage in depositions.  Their legal counsel withdrew.  Mr. Kitsmiller estimates that the cost to the Debtors of completing the State Court Action would be approximately $200,000.  Mr. Kontnik estimated such cost at $100,000.  And, as the companies continued to burn through funds, defending the State Court Action was also taking time away from Ralls' ability to focus on his companies' business operations and grow those business operations into something successful and profitable.

So, Ralls, Earth.com, and EarthSnap filed their Petitions for relief under Chapter 11 Subchapter V, on April 19, 2023.  The Debtors hoped that bankruptcy would alleviate both the financial and time burdens associated with the State Court Action.  Ralls intends, in the Bankruptcy Cases, to sell EarthSnap, and potentially Earth.com, and believes that he will be better able to do so in bankruptcy, where he will be free from the pressures of having to defend the State Court Action and can focus on the sale efforts.  Metaversal and DEM did not file for bankruptcy because, according to Ralls, they lack sufficient liquid funds to do so.  At the time of the bankruptcy filings, PlantSnap and DEJ Partners' monetary claims in the State Court Action remained pending.  PlantSnap and DEJ Partners claim damages in excess of $12 million.  If the Bankruptcy Cases continue, PlantSnap has committed that it will file complaints to establish the nondischargeability of the debts owed to it by Ralls and Earth.com under Section 523(a).  DEJ Partners was more noncommittal, but acknowledged that it was also evaluating whether to file nondischargeability complaints.

### 1.    The *Ralls* Case

In Ralls' Schedule A/B, he states that he owns an 86% interest in DEM, a holding company which owns 100% of Earth.com, EarthSnap, and Metaversal.[26]  Metaversal is a company that provides staffing services.  Notwithstanding the March 8, 2021 foreclosure of Ralls' 750,000 shares of PlantSnap stock, and notwithstanding the State Court's ruling in the Combined Order finding that DEJ Partners was entitled to foreclose on those shares, Ralls lists the 750,000 shares of PlantSnap as an asset on Schedule

---

[26]    Ex. 24 at 20.

A/B.[27]  When questioned about this at the Joint Preliminary Hearing on the Motions for Relief, Ralls' counsel acknowledged that Schedule A/B would need to be amended because, at best, Ralls owns only a potential beneficiary interest resulting from the sale of the shares.[28]  Ralls' other assets are *de minimis*, and he claims exemptions in them up to their full values in his Schedule C.[29]  Still in his Petition,[30] Ralls estimates that his assets are worth between $10,000,001 and $50 million.

Ralls does not identify any creditors who have secured claims on Schedule D.[31] On Schedule E/F, he identifies seven creditors with claims totaling $1,551,832.87, including a claim for an attorney's fee award to DEJ Partners in the amount of $63,055, a claim for an attorney's fee award to $84,338.76 to PlantSnap (listed as "Contingent," "Unliquidated," and "Disputed"), and claims for personal loans, attorney fees, credit cards used for business purposes, personal guaranties, personal loans, and other debts.  Ralls also lists two additional creditors:  DEJ Partners and PlantSnap, which he indicates have "Litigation Claims" of unknown amounts.  He states that such claims are "Contingent," "Unliquidated," and "Disputed."[32]

Twenty-two claims in the total amount of $27,177,648.04 have been filed in the *Ralls* Case.  Of those claims, two have been filed by PlantSnap.  In Proof of Claim No. 17-1, PlantSnap asserts an unsecured claim in the amount of $86,111.61, attaching the "Order Re:  Motion for Entry of Final Judgment for an Award of Attorneys' Fees" issued by the State Court on February 15, 2023.  In Proof of Claim No. 18-1, PlantSnap asserts an unsecured claim in the amount of $8,239,884.40 for "Tort Claims," attaching a "Statement in Support of Claim," along with the Complaint filed in the State Court Action and other documents.

DEJ Partners asserts three proofs of claim in the *Ralls* Case.  In Proof of Claim No. 19-1,  DEJ Partners alleges an unsecured claim in the amount of $63,856.35, listing "Order Awarding Attorney Fees" as the basis for such claim.  In Proof of Claim No. 20-1, DEJ Partners asserts an unsecured claim in the amount of $978,043.23, listing "Colorado State Court Order on Partial Summary Judgment" as the basis for such claim. In Proof of Claim No. 21-1, DEJ Partners asserts an unsecured claim in the amount of $14,461,209 for "Tort Claims," attaching a "Statement in Support of Claim," along with the Complaint and Counterclaims and Third-Party Complaint filed in the State Court Action and other documents.

## 2.      The *Earth.com* Case

In Earth.com's Schedule A/B, it lists very few assets:  only two Dell computers with a value of $1,000, a "Full index of approximately 6 million webpages comprising

---

27      *Id.*
28      *Id.* at 18-23.
29      *Id.* at 24-25.
30      *Ralls* Case Docket No. 1 at 6.
31      Ex. 24 at 26.
32      *Id.* at 27-36.

Earth.com," and "Customer lists, mailing lists, or other compilations e-mail addresses from newsletter signups," both with unknown value.[33]  Earth.com estimates its assets as having a value of between $10,000,001 and $50 million.[34]

Earth.com does not identify any creditors who have secured claims on Schedule D.[35]  On Schedule E/F,  Earth.com identifies twelve creditors with claims totaling $5,536,297.06.  Of these, the creditor with the largest claim is Innovation HQ for $5,000,000.  Earth.com states that Innovation HQ's claim is "Unliquidated."  Earth.com also lists DEJ Partners and PlantSnap as having "Litigation Claims" of unknown amounts.  It states that such claims are "Contingent," "Unliquidated," and "Disputed."[36]

At present, thirteen claims in the total amount of $16,988,200.87  have been filed in the *Earth.com* Case, including one claim filed by PlantSnap, and one by DEJ Partners.  In Proof of Claim No. 11-1, PlantSnap asserts an unsecured claim in the amount of $11,030,832.16 for "Tort Claims," attaching a "Statement in Support of Claim," along with the Complaint and related exhibits filed in the State Court Action.  In Proof of Claim No. 12-1, DEJ Partners asserts an unsecured claim in the amount of $3,522,734.00 for "Tort Claims," attaching a "Statement in Support of Claim," along with the Complaint and Counterclaims and Third-Party Complaint filed in the State Court Action and other documents.

### 3.    The *EarthSnap* Case

In EarthSnap's Schedule A/B, it lists very few assets:  a bank account with $43.67, accounts receivable of $3,264.17, Dell computers with a value of $1,000, an EarthSnap, Inc. Patent Filing #63 with a value of $313,684, EarthSnap Trademarking Filing Serial Number 88086452 with unknown value, Internet domain names and websites with unknown value; and "EarthSnap Application; Currently in Final Development Stages" with unknown value.[37]   Earth.com estimates its assets at having a value of between $10,000,001 and $50 million.

EarthSnap does not list any creditors who have secured claims on Schedule D.[38]  On Schedule E/F, EarthSnap identifies eleven creditors with claims totaling $608,607.33.  The claims are for software and marketing expenses, web hosting and app development services, and legal fees.  EarthSnap also lists DEJ Partners and PlantSnap as having "Litigation Claims" of unknown amounts.  It states that such claims are "Contingent," "Unliquidated," and "Disputed."[39]

---

[33]    Ex. 26 at 5-8.
[34]    *Earth.com* Case Docket No. 1.
[35]    Ex. 26 at 9.
[36]    *Id.* at 10-13.
[37]    Ex. 28 at 5-9.
[38]    *Id.* at 10.
[39]    *Id.* at 11-14.

In Proof of Claim No. 6-1, DEJ Partners asserts an unsecured claim in the amount of $11,030,832.16 for "Tort Claims," attaching in support of its claim the Counterclaims and Third-Party Complaint filed in the State Court Action.

## V.   Applicable Legal Standards.

### A.   Legal Standard for Relief from Stay.

Section 362(a)(1) establishes an automatic stay in bankruptcy cases and generally prohibits:

> . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

Notwithstanding this, the Bankruptcy Code permits relief from the automatic stay in certain circumstances.  Section 362(d) states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —
>
> (1)  for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
>
> (2)  with respect to a stay of an act against property under subsection (a) of this section, if —
>
> > (A) the debtor does not have an equity in such property; and
> >
> > (B) such property is not necessary to an effective reorganization.

Notably, the Movants seek relief from stay only under Section 362(d)(1) "for cause."

Relief from stay proceedings are summary in nature and determined on an expedited basis. "It is not a full determination of the merits."  *U.S. Bank, N.A. v. Brumfiel (In re Brumfiel)*, 514 B.R. 637, 645 (Bankr. D. Colo. 2014).  "Following a preliminary hearing on a motion for relief from stay, the Court must grant the requested relief unless it is able to conclude that 'there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of [a] final hearing.'" *Midwest Motor Supply*

14

*Co., Inc. v. Hruby (In re Hruby)*, 512 B.R. 262, 265-66 (Bankr. D. Colo. 2014) (Bankr. D. Colo. 2014) (Tallman, B.J.) (quoting 11 U.S.C. § 362(e)(1), brackets in *Hruby*).

B.   **The Burden of Proof**.

Section 362(g) allocates the burden of proof, and states:

In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section —

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

In *In re Jim's Maintenance & Sons, Inc.*, 418 Fed. Appx. 726, 728 (10th Cir. 2011), the appellate panel went on to explain the allocation of the burden of proof: "The moving party has the burden to show that 'cause' exists to lift the stay, after which the burden shifts to a debtor to demonstrate why the stay should remain in place." So, in this case, the Movants have the initial burden to demonstrate cause. Then, if that burden is satisfied, the burden shifts to the Debtors.

C.   **Section 362(d)(1) Cause**.

As noted in *JE Livestock, Inc. v. Wells Fargo Bank, N.A. (In re JE Livestock, Inc.)*, 375 B.R. 892 (10th Cir. BAP 2007), the Bankruptcy Code does not define "cause." Consequently, relief based on a finding of cause "is a discretionary determination made on a case by case basis." *Busch v. Busch (In re Busch*, 294 B.R. 137, 140 (10th Cir. BAP 2003). In *Jim's Maintenance*, the appellate court stated the standard similarly: "Relief from the automatic stay may be granted for cause . . . which involves a discretionary determination by the bankruptcy court made on a case by case basis." *Jim's Maintenance*, 418 Fed. Appx. at 728.

Ultimately, the Section 362(d)(1) question in this case comes down to whether the Court should grant relief from stay to permit the Movants and the Debtors to return to the State Court to resolve their disputes in the State Court Action (at least through entry of judgment).

In determining whether cause exists within the meaning of Section 362(d)(1), Courts look to the "totality of the surrounding circumstances." *Robert and Joan Dennen Trust Dated October 11, 2007 v. Dennen (In re Dennen)*, 539 B.R. 182, 186 (Bankr. D. Colo. 2015) (Tallman, B.J.). "As an aid to that determination, this Court and others in the Tenth Circuit often look to the 'Curtis Factors' set out in the case of *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah, 1984)." *Id. See also In re Dampier*, 523 B.R. 253, 256

15

(Bankr. D. Colo. 2015) [hereinafter *Dampier I*], *aff'd Dampier v. Credit Investments, Inc.*, 2015 WL 6756446 (10th Cir. BAP Nov. 5, 2015) [hereinafter *Dampier II*]; *Hruby*, 512 B.R.at 268; *In re Dryja*, 425 B.R. 608, 611 (Bankr. D. Colo. 2010); and *In re Spoverlook, LLC*, 2016 WL 2342930, at *4 (Bankr. D.N.M. Apr. 29, 2016).  The *Curtis* factors have been endorsed by appellate Courts within the Tenth Circuit including in *Jim's Maintenance*, 418 Fed. App'x 726 (unpublished); and *Busch*, 294 B.R. 137.  Both the Movants and the Debtors reference and rely on the *Curtis* decision.

The so-called *Curtis* factors are:

1. Whether the relief will result in a partial or complete resolution of the issues.

2. The lack of any connection with or interference with the bankruptcy case.

3. Whether the foreign proceeding involves the debtor as a fiduciary.

4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.

7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).

10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties.

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.

12. The impact of the stay on the parties and the "balance of hurt."

*Dennen*, 539 B.R at 186 (citing *Curtis*, 40 B.R. at 799-800). "Because the ultimate determination is based on the totality of the circumstances in the particular case before the court, not all of the *Curtis* Factors will be relevant in every case and the Court is free to consider other matters not considered by the *Curtis* court." *Id*. *See also Dampier I*, 523 B.R. at 256 (considering and applying only relevant factors).

## VI.    Legal Analysis.

### A.    Summary of the Parties' Positions Regarding Relief from Stay.

#### 1.    The Movants' Position.

The Movants contend that cause exists to grant relief from the automatic stay "for cause" under Section 362(d) because granting relief will allow for a determination by the State Court as to the validity and value of their claims against each of the Debtors, which at present are unliquidated and disputed.  The Movants also contend that a ruling by the State Court on the Movants' claims for fraud and civil theft may form the basis for issue preclusion or collateral estoppel in the planned nondischargeability proceedings against Ralls and Earth.com under Section 523(a).  The Movants note that the State Court Action has been pending for more than two years and has advanced to the point where all that really remains is for the State Court to rule on PlantSnap's pending motion for summary judgment and for the State Court to conduct the trial followed by the entry of judgment.  Starting over in bankruptcy, the Movants contend, will be inefficient and uneconomical, while allowing the State Court Action to proceed will both permit for determination of the Debtor's liabilities and resolve many (if not all of) the issues that would have to be determined in the planned nondischargeability proceedings against Ralls and Earth.com.

#### 2.    The Debtors' Position.

The Debtors dispute that "cause" exists to grant relief from stay under Section 362(d).  They contend that since they do not have the financial means to defend the claims against them in the State Court Action, nor to prosecute Ralls' counterclaims, they will be forced to default, which will be prejudicial to their efforts to reorganize and to other creditors.  The Debtors assert that, with a stay in place, they will be able to regroup, hire experts, and participate in a trial in this Court on the disputed claims of PlantSnap and DEJ Partners so that the Court can decide the claims on the merits.  The Debtors also assert that litigation the State Court would prejudice the interests of other creditors and interested parties and allowing the State Court Action to proceed will create a duplication of efforts and expenses which must be borne by the estate, to the

17

detriment of creditors.  The Debtors contend that, since only this Court can determine both the amount and the nondischargeability of claims against Ralls and Earth.com, such matters are more economically and expeditiously determined in this single forum.

**B.      Application of the *Curtis* Factors.**

The Court considers the following *Curtis* factors, discussed below, to be relevant to its determination of whether to grant the Movants relief from stay for cause under Section 362(d)(1).  The Movants and the Debtors have agreed that *Curtis* factors Nos. 3, 6, 8, and 9 are not applicable to the Bankruptcy Cases.[40]  The Court concurs and thus will confine its analysis to the other relevant *Curtis* factors.

**1.      Factor 1:  Whether the relief will result in a partial or complete resolution of the issues.**

PlantSnap has pled various claims for monetary relief in the State Court Action, including:  a claim for conversion against Ralls and Earth.com; a claim for civil theft against Ralls and Earth.com; a claim for breach of fiduciary duties against Ralls; a claim for aiding and abetting breach of fiduciary duties against Earth.com; a claim for fraud against Ralls; a claim for unjust enrichment against Ralls; and a claim for tortious interference with contractual relationships against Ralls.   DEJ Partners has asserted claims for monetary relief:  under the Colorado Organized Crime Control Act, Colo. Rev. Stat.§ 18-17-104, against Ralls, Earth.com, EarthSnap, DEM, and Metaversal; under the Colorado Uniform Fraudulent Transfer Act, Colo. Rev. Stat. § 38-8-105 *et seq.* against Ralls and Earth.com; under the Colorado Uniform Fraudulent Transfer Act , Colo. Rev. Stat. § 38-8-105 *et seq.* against Ralls, Earth.com, EarthSnap, DEM, and Metaversal; for fraudulent inducement against Ralls; and for breach of contract against Ralls.  And Ralls has brought claims for monetary relief against the Movants, including:  an unjust enrichment against DEJ Partners; a derivative claim for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, and corporate waste against DEJ Partners; a claim for unclean hands against DEJ Partners, and a claim for indemnity and advancement against PlantSnap.

The Movants contend that granting relief from the stay to allow the State Court Action to proceed would enable the State Court to liquidate the entirety of the Movants' disputed and unliquidated claims against the Debtors and would allow for the completion of the State Court Action with respect to all pending claims.  If the State Court Action is allowed to move forward, the Movants contend, the State Court will also be able to make findings of fact in connection with PlantSnap's claims and DEJ Partners' claims, which findings would be preclusive in their planned nondischargeability cases against Ralls and Earth.com.

---

[40]      In their Objection, the Debtors state:  "While any judgment lien resulting from the State Court [Action] would likely not be avoidable pursuant to section 522(f) as the Debtors do not own any real property."  The Court takes this to mean that because the Debtors do not own real property to which a lien could attach, factor 9 also is inapplicable.

The Debtors concede that granting relief from stay would result in a determination of some issues, but assert that because it is exclusively within this Court's jurisdiction to determine whether PlantSnap's claims and DEJ Partners' claims are dischargeable under Section 523(a), granting relief from stay will result in only partial resolution of the issues. They contend that the parties' time is better spent determining the value of the Movants' claims and their nondischargeability in a single forum, namely, before this Court.

### a.   Claims Liquidation.

The Debtors' cases are all Chapter 11, Subchapter V cases. By filing under Chapter 11, Subchapter V, the Debtors signified an intention to restructure their debts and reorganize their financial affairs. As such, there is need to determine their liabilities and to identify their assets, including the values thereof. Granting relief from stay would allow the State Court to liquidate all claims PlantSnap has against Ralls and Earth.com — matters which would otherwise have to be decided by this Court in a claims objection process. Similarly, granting relief from stay would allow the State Court to liquidate all claims DEJ Partners has against Ralls, Earth.com, and EarthSnap — matters which would otherwise have to be decided by this Court in a claims objection process. Granting relief would also allow the State Court to determine whether Ralls has any valid claims against PlantSnap and DEJ Partners, including an accounting related to the 750,000 shares of PlantSnap stock that were foreclosed upon and transferred to DEJ Partners, and whether any amounts are owed to Ralls by DEJ Partners — matters which would have to be resolved in connection with the Chapter 11 case. The determination of such matters is important because the Debtors will need to provide for repayment of their debts in their Subchapter V plans, and because Ralls ability to reorganize likely hinges on whether he is owed, or whether he owes, the sums at issue in the State Court Action. In this Court's assessment, allowing the State Court Action to proceed would result in definitive and full resolution of all the claims liquidation issues.

### b.   Dischargeability.

As the Debtors note, however, the Movants do not merely wish to establish the value of their claims, they intend to seek a determination that some of their claims are nondischargeable, which determination lies within the exclusive jurisdiction of this Court. So, would granting relief from stay to permit liquidation of the claims pled in the State Court Action result in a complete determination of the issues, or would it merely result in this Court's having to hold a second trial on nondischargeability?

If the State Court Action were to progress to a determination, on the merits, of the claims brought by the parties, and enter final judgment on such claims, then pursuant to the Full Faith and Credit Statute, 28 U.S.C § 1738, any findings made in the State Court likely would have a preclusive effect in this Court. *See Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (holding that federal law requires federal courts to give the same preclusive effect to a state judgment as the

19

laws of the courts of that state).  Specifically, re-litigation of an issue decided by a Colorado Court is precluded where:

> 1. The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding;
>
> 2. The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding;
>
> 3. There was a final judgment on the merits in the prior proceeding;
>
> 4. The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo.1999).  *See also Steward Software Co., LLC v. Kopcho (In re Kopcho)*, 2014 WL 3933657, at *2 (Aug. 14, 2014) (applying Colorado law of collateral estoppel as set forth in *Bebo Constr.*). The Tenth Circuit Court of Appeals has expressly recognized that "[a]lthough a bankruptcy court in a dischargeability action under 11 U.S.C. § 523(a) ultimately determines whether or not a debt is dischargeable, . . . the doctrine of collateral estoppel may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability."  *In re Wallace*, 840 F.2d 762, 764-65 (10th Cir.1988).

In the State Court Action, PlantSnap asserts a civil theft claim against the Debtors.  In *Kopcho*, 2014 WL 3933657, Bankruptcy Judge Tallman compared the elements that must be proved to establish civil theft as a matter to Colorado law to the elements of a claim to establish nondischargeability on the basis of embezzlement under Section 523(a)(4) and found that "[t]he issues are identical for purposes of the application of collateral estoppel."  *Id.* at *5.  Since "the issues that underpin civil theft, for which the Defendant was found liable in Colorado State Court," were sufficient to establish the Defendant's liability for embezzlement under the Bankruptcy Code," the Debtor was estopped from denying liability under Section 523(a)(4).  Similarly, if the State Court were to enter a civil theft judgment on the merits against the Debtors, such judgment may be dispositive under Section 523(a)(4).

In the State Court Action, both PlantSnap and DEJ Partners assert multiple types of claims for fraud against the Debtors.  A recent case, *Kalil v. Hall (In re Hall)*, 2023 WL 4166452, at *7 (Bankr. D. Colo. Jun. 14, 2023), compared the elements of a claim for fraud with the elements that must be proved to establish nondischargeability under Section 523(a)(2), as well as the elements for a claim of civil theft with the elements that must be proved to establish nondischargeability under Sections 523(a)(4) and (a)(6). On the basis of such comparisons, the Court determined that the debtors were "collaterally estopped from challenging the state court's jury verdict and final judgment of fraud and civil theft in the bankruptcy court."  *Id.*  Because "the state court based its

judgment on verdicts of a jury of the peers of [the debtors] and because "the bankruptcy dischargeability issues are identical with two of the issues decided by the state court, including the lower standard of justifiable reliance in Colorado for fraud; the prior action was fully adjudicated on the merits; the party against whom the doctrine is invoked was a party in the prior action; and the [debtors] had a full and fair opportunity to litigate the issue in the prior action," the Court granted summary judgment in favor of the creditor who had brought the nondischargeability claims and entered judgment in his favor. *Id*. Similarly, if the State Court were to enter a fraud judgment against the Debtors, such judgment may be dispositive under Section 523(a)(4). *Hemp Recovery Co., LLC v. Boyd (In re Boyd)*, 2023 WL 4441942 (Bankr. D. Colo. July 10, 2023) (granting summary judgment in Section 523(a)(2) nondischargeability action on the basis of state court fraud judgment).

In the Bankruptcy Cases, because the doctrine of collateral estoppel may be invoked to preclude the relitigation of factual and legal issues to be decided in the State Court Action, granting relief from stay to allow the State Court Action to proceed may result in a determination of all factual and legal issues necessary to decide at least some of the nondischargeability claims that PlantSnap and DEJ Partners intend to bring against the Debtors. As such, it could be that all that this Court would need to do in an adversary proceeding on a Section 523(a) complaint would be to declare a judgment issued in the State Court Action nondischargeable or dischargeable on the basis of the State Court's findings.

Under the circumstances, granting relief from stay would result in complete resolution of claims liquidation issues and also likely would result in complete or near-complete resolution of potential dischargeability actions against the Debtors under Section 523(a). This factor weighs in favor of granting relief from stay. *See Dampier I*, 523 B.R. at 257 (granting relief from stay where "relief will result in resolution of questions of fact and liability that are significant").

## 2.   Factor 2:  The lack of any connection with or interference with the bankruptcy cases.

Both the Movants and the Debtors acknowledge that the State Court Action is directly connected with the Debtors' Bankruptcy Cases. PlantSnap asserts that, because Ralls, Earth.com, and EarthSnap seek to restructure their debts and reorganize their financial affairs, the value, if any, of PlantSnap's disputed and unliquidated claims must be determined so that such claims can be addressed in the Debtors' plans of reorganization. DEJ Partners makes the same argument with respect to its claims against the Debtors. The Debtors, on the other hand, assert that the State Court Action will interfere with the Bankruptcy Cases, arguing that it was the time and expense of the State Court Action that caused the Debtors' bankruptcy filings in the first place. They contend that having to spend time and money in two proceedings, and litigation in two forums, will interfere with reorganization efforts and that litigation efforts.

A determination as to what assets each Debtor has, and the validity and amount of the claims against each Debtor must be made in some venue, as such determinations are essential and necessary to the administration of the Debtors' bankruptcy cases.  While the Court recognizes that litigating such matters in the State Court will take time and result in both parties incurring attorney's fees, the same would be true if this Court were to hear multiple contested matters regarding claims validity — especially if coupled with adversary proceedings.  Allowing the determinations to be made in the State Court, which has familiarity with the Debtors and the facts of the State Court Action, and which was ready to proceed to trial on such issues in short order after years of pretrial litigation and discovery, will not interfere with the Bankruptcy Cases.  To the contrary, the State Court's prompt determination of such issues will resolve matters that will allow the Bankruptcy Cases to move forward more expeditiously than if such determinations are to be made in this venue, as it would take a good deal of time and effort for this Court to get up to speed on matters that the State Court must already have invested time and energy on in preparation for the trial that was impending when the Bankruptcy Cases were filed.  *See Dampier I*, 523 B.R. at 257 ("[A]llowing the State Court Lawsuit to proceed will have little to no interference with each Debtor's bankruptcy case. These disputed issues must be tried in some forum, and the State Court Lawsuit was only a few weeks from trial when the bankruptcy cases were filed. The State Court is better postured than this one to more timely provide a trial on the merits."); *In re Danzik*, 549 B.R. 804, 808 (Bankr. D. Wyo. 2016) (noting that in a reorganization case, claims of creditors must be liquidated and finding that entry of a final judgment as to the value of such claims will assist, rather than interfere, with the bankruptcy case as "it will allow the claim to be properly addressed and handled" in the reorganization process).  Under the circumstances, the Court finds that this factor weighs in favor of granting relief from stay.

### 3.   Factor 4:  Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.

The Movants acknowledge that the State Court is not a specialized tribunal, but argue nevertheless that because the State Court has been hearing the parties' dispute for some time now, and has familiarity with the claims and counterclaims asserted, the parties involved, and the facts related to the claims and counterclaims, it provides a superior forum for liquidation of the claims and determination of the issues.  The Debtors agree that the State Court is not a specialized tribunal, but assert that this Court is one since only this Court can determine the nondischargeability claims that PlantSnap and, potentially, DEJ Partners intend to bring.  The Debtors dispute that the prior litigation in the State Court gives the State Court specialized knowledge or familiarity regarding the issues.  They note that most issues remain undecided and argue that, to the extent that substantive issues have been litigated, determinations by the State Court cannot be relitigated in this forum.

The Court assesses this factor as effectively neutral.  The State Court is not a specialized tribunal.  Instead, it is a court of general jurisdiction capable and competent

to decide all of the issues raised in the State Court Action. Obviously, it has far greater familiarity with the disputes between the Movants and the Debtors than this Court. While this Court has specialized knowledge of nondischargeability issues, the Court does not consider that as significant under the circumstances because any findings of fact and judgment on the merits rendered by the State Court in the State Court Action are likely to have issue preclusion or collateral estoppel effects such that this Court's consideration of specialized nondischargeability issues may be abbreviated.

4.    **Factor 7:  Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.**

The Debtors contend that litigation in the State Court Action would prejudice the interests of other creditors, "as PlantSnap and DEJ are attempting to get relief from stay in order to proceed with litigation in another forum that will create a duplication of efforts and expense," and as the expense of litigating the State Court Action must be borne by the estate or result in a default judgment that could be used for preclusive effect.[41]  The Movants see it differently, arguing that litigating the State Court Action will determine certain issues with finality and would narrow the scope of other issues, allowing for a reorganization to progress more quickly.

The Court does not see how allowing the State Court Action to proceed would hinder the Debtor's reorganization. To the contrary, the costs of determining the validity of both the Movants' and Debtors' claims and counterclaims must arise in some case at some time. *See Wilson v. Unioil (In re Unioil)*, 54 B.R. 192, 195 (Bankr. D. Colo. 1985) ("The debtor has pointed out that the securities litigation will entail great expense, in terms of both time and money, that could otherwise be utilized towards affecting a successful reorganization.  However, the high cost of defending the securities litigation is not sufficient, by itself, to constitute 'great prejudice,' which would preclude modification of the stay.") (citing *Matter of McGraw*, 18 B.R. 140 (Bankr. W.D. Wis. 1982)).  *See also Danzik*, 549 B.R. at 809 ("The fact that the lawful and appropriate resolution of a legal claim may result in a reduced potential for recovery by the estate does not constitute legal prejudice to the rights of creditors.").

The Debtors estimate the remaining costs of the State Court Action at between $100,000 and $200,000.  However, there is no evidence that the costs of liquidating the claims in the State Court Action would be less in this Court, and the Court knows of no reason why that would be the case.  If anything, it seems that costs would probably be less in the State Court Action, since all that remains is adjudication of the remaining PlantSnap motion for summary judgment and trial itself, whereas determination of the

---

[41]    The Debtors also argue that to the extent that the Movants are allowed to proceed in the State Court Action on their fraudulent conveyance claims, determinations with respect to such claims could prejudice creditors absent the involvement of an estate fiduciary to protect creditors' interests.  The Debtors did not expand on this point, but since the Debtors are themselves fiduciaries as Chapter 11, Subchapter V debtors, the Court can perceive of no reason why creditors' interests would be less protected in the State Court forum than in this one.

claims in this Court would necessarily require the filing of motions to disallow the claims of PlantSnap and DEJ Partners, the filing of responses, objections, discovery, pretrial proceedings, and the setting of such matters for trial.

The Court also does not believe that allowing the State Court Action to proceed would result in duplicative expense, because the State Court's decisions and judgment on the merits in the State Court Action are likely to be preclusive in the Bankruptcy Cases.  Factor 7 is neutral or slightly favors the Movants.

5. **Factors 10 and 11:  The interest of judicial economy and the expeditious and economical determination of litigation for the parties and whether the foreign proceedings have progressed to the point where the parties are prepared for trial.**

The State Court has already heard and ruled upon motions for preliminary injunction filed by both PlantSnap and Ralls, an exercise which required it to take testimony and consider documentary evidence and to determine whether the parties had demonstrated a reasonable probability of success on the merits, among other things.[42]  The State Court also ruled on DEJ Partners' motion for partial summary judgment and was close to ruling on PlantSnap's motion for summary judgment, which had been fully briefed by the parties.  Trial on the claims that remained to be determined after summary judgment was set for June 5, 2023.  So, the disputes were virtually trial ready.  The Debtors plainly filed for bankruptcy protection to avoid the trial of the State Court Action in the State Court.

Because the State Court Action had progressed to the point where it was ready for trial, and because the State Court already had great familiarity with the parties, the evidence, and the issues that must be decided, the interests of economy and efficiency would be better served by allowing relief from stay so that the disputes can proceed in the State Court.  The Court also notes that two non-debtor entities (DEM and Metaversal) also are parties in the State Court Action.  If the Court does not grant relief from stay, that would result in inefficiency and additional costs because the Movants would still need to pursue their claims against DEM and Metaversal in the State Court Action because DEM and Metaversal are not bankruptcy debtors.  Obviously, such a split approach is not viable.  Factors 10 and 11 weigh extremely strongly in favor of granting relief from stay and are amongst the very most important factors.

6. **Factor 12:  The impact of the stay on the parties and the "balance of hurt".**

While the financial and time costs of continuing litigation in the State Court might pose legitimate difficulties for the Debtors, there is no reason to believe that the financial and time costs of determining the same issues at the heart of the State Court Action

---

[42]   The State Court live heard testimony from Ralls and Mr. Giblin and admitted 53 exhibits into evidence.  Ex. 4 at 1-2.

would be any less were the Court to deny relief and instead proceed to hear the numerous claim objections and nondischargeability proceedings that will otherwise need to be tried in this forum.  Indeed, the hurt may be less if the State Court is granted leave to continue the State Court Action, rather than if the Debtors are permitted to start the process in a new venue after so many years of litigation in the State Court Action.

## VII.    Conclusion and Order.

The Court has considered the totality of the circumstances and each of the applicable *Curtis* factors and concludes that they support granting relief from stay to allow the State Court Action to continue against the Debtors.  In particular, given the progress of the State Court Action, the Court decides that the prosecution of the State Court Action through trial is the most efficient and economical path forward on the disputed issues and will best serve the parties in interest in the Bankruptcy Cases.  It is, therefore,

ORDERED that the Motions for Relief are GRANTED to allow the Movants to proceed to trial and judgment in the State Court Action.  Relief is limited to proceeding through entry of judgment.  The Movants may not take action to collect on any debts.

DATED this 19th day of July, 2023.

BY THE COURT:

Thomas B. McNamara,
United States Bankruptcy Judge